UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORREY DELOZIER, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-14094** |
| **S2 ENERGY OPERATING, LLC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (2)** |

### ORDER AND REASONS

Before the Court are two motions for summary judgment on Correy Delozier's seaman status under the Jones Act: (1) the motion filed by Defendants Stephen Dauzat and Wood Group PSN, Inc. ("Wood Group") on July 27, 2020;[1] and (2) the motion filed by Defendant S2 Energy Operating, LLC ("S2") on July 29, 2020.[2] Because there remain disputed issues of material fact as to whether Correy Delozier qualifies for seaman status, the motions are **DENIED**.

### BACKGROUND

Plaintiff Correy Delozier alleges he was working as an offshore operator, doing work on S2's fixed platforms and wells in the Timbalier Bay Field, when he sustained significant injuries by being "crushed" between an oil well and a crew boat during an attempted transfer.[3] Delozier and his wife, Valerie Delozier, filed suit against S2, Pioneer

---

[1] R. Doc. 105. This motion was adopted by Defendant Pioneer Production Services. R. Doc. 118. Plaintiffs opposed the motion. R. Doc. 123. Plaintiffs provided a supplemental response to Defendants Stephen Dauzat and Wood Group's statement of undisputed material facts. R. Doc. 137. Defendants Stephen Dauzat and Wood Group PSN, Inc. replied to Plaintiffs' opposition. R. Doc. 141.
[2] R. Doc 110. This motion was adopted by Defendant Pioneer Production Services. R. Doc. 118. This motion was also adopted by Defendants Stephen Dauzat and Wood Group PSN, Inc. R. Doc. 144. Plaintiffs opposed the motion. R. Doc. 124. Plaintiffs provided a supplemental response to Defendant S2 Energy's statement of undisputed material facts. R. Doc. 138. Defendant S2 Energy replied to Plaintiffs' opposition. R. Doc. 147.
[3] R. Doc. 68 at ¶ XIX.

1

Production Services, Inc. ("Pioneer"), Wood Group, and Dauzat seeking damages for his injuries and her loss of consortium.

## STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "An issue is material if its resolution could affect the outcome of the action."[5] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[6] All reasonable inferences are drawn in favor of the nonmoving party.[7] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[8]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[9] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[4] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[5] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[6] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[8] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[9] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[10]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[11] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[12] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[13] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[14] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[10] *Celotex*, 477 U.S. at 322–24.
[11] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[12] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[13] *Celotex*, 477 U.S. at 332–33.
[14] *Id.*

either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[15] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[16]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[17]

## LAW AND ANALYSIS

The Defendants argue their motions for summary judgment should be granted because Delozier, hired as an operator with primary duties related to S2's fixed platforms and wells in the Timbalier Bay Field, is not a seaman. In order to avail himself of a cause of action for negligence under the Jones Act, Delozier bears the burden at trial of proving he was a "seaman" working in the service of a vessel or a fleet of vessels in the Timbalier Bay Field at time of his injury.[18] On summary judgment, the Defendants must establish

---

[15] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[16] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[17] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[18] *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1345 (5th Cir. 1980); *Bernard v. Binnings Const. Co.*, Inc., 741 F.2d 824 (5th Cir. 1984) ("The burden of establishing seaman status is, of course, on the party claiming the benefits to be derived therefrom.").

4

there are no material facts in dispute and they are entitled to judgment as a matter of law. The Court must view the evidence and any inferences drawn from the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact and whether the movants are entitled to judgment as a matter of law.[19]

"The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen."[20] Summary judgment is proper only when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[21] When underlying material facts regarding a plaintiff's seaman status are disputed, the question escapes summary judgment and must be left for a jury.[22] Seaman status is a mixed question of law and fact[23] requiring a fact-intensive analysis that must be determined on a case-by-case basis.[24] An inquiry into the nature of a vessel and an injured employee's precise relationship with it is fact specific.[25]

If reasonable persons could draw conflicting inferences, seaman status is a question for the jury and summary judgment must be denied.[26] "[T]he issue of seaman

---

[19] *See Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 309 (5th Cir.1984).
[20] *Guidry v. South La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980).
[21] *Id. See Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984) (finding the parties agreed the relevant facts were not in dispute and reasonable persons could not have differed with respect to the inferences drawn from those facts). *See also Ellender v. Kiva Const. & Engineering, Inc.*, 909 F.2d 803, 805–06 (5th Cir. 1990); *Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350, 352 (5th Cir. 1982).
[22] *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir. 1981); *Stanley v. Guy Scroggins Const. Co.*, 297 F.2d 374, 376-77 (5th Cir. 1961).
[23] *Chandris v. Latsis*, 515 U.S. 347, 369 (1995); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).
[24] *Encarnacion v. BP Exploration and Production, Inc.*, 2013 WL 968138 (E.D. La. Mar. 12, 2013). *See In Re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000) (stating "the difficult—perhaps insurmountable—task of giving a cogent meaning to ["seamen"] has been left to the courts.").
[25] *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) (citing *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190 (1952)).
[26] *Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369. *Cf. Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979) (reversing district court's denial of plaintiff's motion for a directed verdict because "the facts governing plaintiff's status as a seaman were established beyond cavil").

there are no material facts in dispute and they are entitled to judgment as a matter of law. The Court must view the evidence and any inferences drawn from the evidence in the light most favorable to the non-movant to determine whether there is a genuine issue of material fact and whether the movants are entitled to judgment as a matter of law.[19]

"The Jones Act is remedial legislation and as such should be liberally construed in favor of injured seamen."[20] Summary judgment is proper only when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[21] When underlying material facts regarding a plaintiff's seaman status are disputed, the question escapes summary judgment and must be left for a jury.[22] Seaman status is a mixed question of law and fact[23] requiring a fact-intensive analysis that must be determined on a case-by-case basis.[24] An inquiry into the nature of a vessel and an injured employee's precise relationship with it is fact specific.[25]

If reasonable persons could draw conflicting inferences, seaman status is a question for the jury and summary judgment must be denied.[26] "[T]he issue of seaman

---

[19] *See Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 309 (5th Cir.1984).
[20] *Guidry v. South La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980).
[21] *Id. See Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984) (finding the parties agreed the relevant facts were not in dispute and reasonable persons could not have differed with respect to the inferences drawn from those facts). *See also Ellender v. Kiva Const. & Engineering, Inc.*, 909 F.2d 803, 805–06 (5th Cir. 1990); *Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350, 352 (5th Cir. 1982).
[22] *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir. 1981); *Stanley v. Guy Scroggins Const. Co.*, 297 F.2d 374, 376-77 (5th Cir. 1961).
[23] *Chandris v. Latsis*, 515 U.S. 347, 369 (1995); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).
[24] *Encarnacion v. BP Exploration and Production, Inc.*, 2013 WL 968138 (E.D. La. Mar. 12, 2013). *See In Re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000) (stating "the difficult—perhaps insurmountable—task of giving a cogent meaning to ["seamen"] has been left to the courts.").
[25] *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) (citing *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190 (1952)).
[26] *Buras*, 736 F.2d at 309; *Chandris*, 515 U.S. at 369. *Cf. Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979) (reversing district court's denial of plaintiff's motion for a directed verdict because "the facts governing plaintiff's status as a seaman were established beyond cavil").

status is ordinarily a jury question, even when the claim to seaman status is marginal."[27] Thus, summary judgment on seaman status often is inappropriate.[28]

The Jones Act does not define "seaman," and the "difficult . . . task of giving a cogent meaning to [the] term has been left to the courts."[29] Despite some guidance from Congress and the courts, drawing a line between seaman and non-seaman has proven difficult for courts. Because courts have struggled to fix firm meanings to the terms "seaman" and "vessel," it is often said that only jurors may determine their application in the circumstances of a particular case.[30]

In *Chandris, Inc. v. Latsis*, the Supreme Court provided a two-part test to determine seaman status.[31] First, the employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission."[32] Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration (temporal prong) and its nature (functional prong)."[33] The temporal and functional prongs both must be present.[34] The *Chandris* Court endorsed the Fifth Circuit's rule of thumb for evaluating the temporal prong: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[35] The Fifth Circuit has held the functional prong requires an inquiry into the plaintiff's "service, his status as a

---

[27] *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984). *See Barrios v. La. Const. Materials Co.*, 465 F.2d 1157, 1162 (5th Cir. 1972) (finding a jury could reasonably conclude a dragline oiler was a crew member of a spud barge).
[28] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).
[29] *Sanchez v. Smart Fabricators of Tex., L.L.C.*, No. 19-20506, 2020 WL 4726062, at *2 (5th Cir. Aug. 14, 2020) (quoting *In Re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000)).
[30] *Offshore Co. v. Robison*, 266 F.2d 769, 779-80 (5th Cir. 1959).
[31] 515 U.S. 347, 376 (1995).
[32] *Id.* at 368 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).
[33] *Id.*
[34] *Roberts v. Cardinal Services, Inc.*, 266 F.3d at 374.
[35] *Chandris*, 515 U.S. at 371.

member of the vessel, and his relationship as such to the vessel and its operations in navigable waters," not into where the injury occurred, the particular work being performed at the moment of injury, or the job title.[36]

The following material facts are not in dispute. Correy Delozier was nominally employed by Pioneer as an operator.[37] Pioneer contracted with S2 to provide employees, including Delozier, to work in the Timbalier Bay Field.[38] In addition to the various wells dotting the Timbalier Bay Field,[39] S2 owned and operated a quarters barge, four fixed oil production platforms, and a central facility in the field.[40] Delozier's duties included testing wells on the platforms, operating and maintaining production equipment, and conducting tests and data collection at oil wells.[41] During his 14-day hitches, Delozier would travel by boat, the only means of transportation available, between the various platforms and wells.[42] He was not assigned to a particular boat.[43] Delozier was injured on June 22, 2018 while transferring from an S2 Energy boat, the MISS MICHELLE, to the S2 Energy SF4 platform.[44]

---

[36] *Naquin v. Elevating Boats, LLC*, 842 F.Supp.2d 1008, 1016 (E.D. La. Jan. 3, 2012) (citing *Chandris*, 515 U.S. at 359-60, and *Swanson v. Marra Bros.*, Inc., 328 U.S. 1 (1946)). Judge Davis recently highlighted the tension between the Supreme Court's dictates and subsequent Fifth Circuit case law. The Supreme Court in *McDermott International* (498 U.S. 337), *Chandris* (515 U.S. 347), and *Harbor Tug and Barge* (520 U.S. 548) distinguishes land-based from sea-based maritime workers in determining seaman status and requires the injured employee's duties to have taken him to sea, whereas the Fifth Circuit in *Naquin* (744 F.3d 927) and *In re Endeavor Marine* (234 F.3d 287) has found seaman status for employees in service of vessels docked by land. *Sanchez v. Smart Fabricators of Tex., L.L.C.*, No. 19-20506, 2020 WL 4726062, at *4-5 (5th Cir. Aug. 14, 2020) (Davis, J., concurring).
[37] R. Doc. 68 at ¶¶ VI and VIII; R. Doc. 105-11 at ¶ 1, 3, 6; R. Doc. 110-2 at ¶ 1; R. Doc. 137 at 2; R. Doc. 138 at 2.
[38] R. Doc. 68 at ¶ VI; R. Doc. 105-11 at ¶ 2; R. Doc. 110-2 at ¶¶ 1, 3; R. Doc. 137 at 2; R. Doc. 138 at 2.
[39] R. Doc. 110-1 at 8.
[40] R. Doc. 105-11 at ¶ 4, 9; R. Doc. 110-2 at ¶ 3; R. Doc. 138 at 3.
[41] R. Doc. 68 at ¶ VIII; R. Doc. 105-11 at ¶ 3; R. Doc. 137 at 3; R. Doc. 110-2 at ¶ 10; R. Doc. 138 at 12.
[42] R. Doc. 68 at IX; R. Doc. 105-11 at ¶ 7; R. Doc. 137 at 8; R. Doc. 110-2 at ¶¶ 3, 10.
[43] R. Doc. 110-2 at ¶ 13.
[44] R. Doc. 68 at ¶¶ XVII, XIX, XX; R. Doc. 105-11 at ¶ 14; R. Doc. 110-2 at ¶ 2; R. Doc. 137 at 18; R. Doc. 138 at 2.

With respect to Delozier's seaman status, many more material facts are in dispute than not. As for Delozier's temporal connection with the crew boats, Wood Group and Dauzat admit there are significant disputes regarding the percentage of his time Delozier spent aboard boats in the Timbalier Bay Field.[45] Plaintiff testified he spent about half of his work day on the boats, ranging from four to eight hours a day.[46] At his deposition, Plaintiff provided a time chart he claims demonstrates he spent approximately 359.5 to 415 of his 712 hours in the Timbalier Bay Field (50.49% to 58.30% of his time) on a boat.[47] As Plaintiff points out, the testimony about the cumulative time per day operators typically spend on a boat varied from one hour (Dauzat, employee of Wood Group)[48] to three to four hours on occasion, with an average of one to two hours per day (Shuff, employee of S2).[49] In his affidavit, Michael Baham, an operator in the Timbalier Bay field during the same time as Plaintiff, stated "[a]s Production Operators, we operated the vessels on the water for an average of five hours per day."[50]

Wood Group and Dauzat point to the testimony of Delozier's coworkers to discredit Plaintiff's characterization of the percentage of his time he spent aboard the boats. Wood Group and Dauzat claim Plaintiff's co-workers' testimony, based on the co-workers' own estimates of travel time between different destinations in the field, contradicts the testimony of Delozier that he spent half of his work day in a vessel.[51] Bill Arnold testified it takes from three to ten minutes to travel between facilities and that the furthest distance

---

[45] R. Doc. 105-1 at 7.
[46] R. Doc. 123-2, Correy Delozier Dep. 185:24-186:7, 195:7-9. All deposition citations are to the page numbers of the deposition rather than to record citations.
[47] R. Doc. 105-9, Correy Delozier Dep., Ex. 8, Ex. U, Time Chart.
[48] R. Doc. 123-3, Stephen Dauzat Dep., 42:3-11.
[49] R. Doc. 123-4, Daryl Shuff Dep., 123:4 – 124:5.
[50] R. Doc. 123-8, Michael Baham Decl. at 1.
[51] R. Doc. 105-1 at 19.

8

one would have to travel to get to a well would be seven to eight minutes, but that ninety percent of the wells are within three minutes.[52] William Crooks testified that he agreed with Mr. Arnold's time estimates and it would not take more than fifteen minutes to get from the central facility to any of the wells.[53] Daryl Shuff testified the boat ride from the living quarters to the central facility was two to three minutes, and the time to get from the central facility to the SF5 was anywhere from ten to twelve minutes on a calm day to twenty-five to thirty minutes on a day with rough or choppy seas.[54] Stephen Dauzat, in his declaration, stated he measured his travel time on the Miss Suzy vessel between various facilities in the field as being from two to five minutes.[55] The testimony of the Plaintiff and his co-workers regarding the time required to travel from facility to facility is not consistent. As noted by an example offered by the Plaintiff, the various deponents even gave differing estimates of the time to transfer from one particular point, the Central Facility, to another, the SF4 platform. When asked this question, the deponents variously answered "eight to 10 minutes,"[56] "10, 12 minutes I guess, on a good, calm, calm day,"[57] "twenty to 25 minutes,"[58] and "25 to 30 minutes" on a rough day.[59] Plaintiff testified this trip took twenty to twenty-five minutes.[60] The amount of time needed to travel between various facilities and the percentage of his time Plaintiff spent on the boats is in dispute.

Defendants also question whether Delozier had a connection to a vessel in navigation (or to an identifiable group of such vessels) that was substantial in terms of its

---

[52] R. Doc. 105-4, Bill Arnold Dep. 43:12-44:12, 52:14-54:6.
[53] R. Doc. 105-7, William Crooks Dep. 41:1-17, 42:15-19; R. Doc. 105-8.
[54] R. Doc. 105-8, Daryl Shuff Dep. 44:3-10, 92:15-93:4.
[55] R. Doc. 105-6, Stephen Dauzat Decl.
[56] R. Doc. 123-6, Bill Arnold Dep., p. 43:20-24.
[57] R. Doc 123-4, Daryl Shuff Dep., p. 92:19-93:4.
[58] R. Doc. 123-3, Stephen Dauzat Dep., p. 42:20-21; 76:8-14.
[59] R. Doc. 123-4, Daryl Shuff Dep., p.92:19-93:1.
[60] R. Doc. 123-3, Correy Delozier Dep., p. 179:1-13.

nature. The parties dispute the nature and extent of work Plaintiff performed from a vessel on the platforms or the wells. Wood Group states it is an undisputed material fact that Delozier repaired leaks on production platform piping two times, but other than these two instances, Delozier never performed any work aboard boats at S2's production platforms.[61] Wood Group and Dauzat argue Delozier never performed any work at the S2 Energy from aboard the boats.[62] While it may be true Plaintiff worked on a *platform* from a boat only twice, this does not reflect the full extent of the work Plaintiff testified he did from the boat. Plaintiff testified he twice worked on the water well lines for a production platform from a flatboat.[63] Plaintiff also testified he replaced signs on the wellheads out of a boat more than three or four times, and he once spent a full day replacing signs on wellheads from a boat.[64] Plaintiff further testified he replaced safety valves on the wellheads from the boat once or twice.[65] Plaintiff points to his and Dauzat's depositions to show the work done from the vessels around the field included performing work on wells, changing chokes on the wellheads with the choke wrenches and chokes kept permanently aboard the boats, and undergoing training on the boats.[66] Plaintiff testified he did a lot of production-related work from the boats, including performing work on wells with no or unsafe cribbings;[67] replacing well signs;[68] picking up and transporting

---

[61] Doc. 105-11 at para 12.
[62] R. Doc. 105-3, Correy Delozier Dep. 38:3-39:4, 107:13-108:6; R. Doc. 105-11 at ¶ 12.
[63] R. Doc. 105-3, 38:10–39:4.
[64] R. Doc. 123-2 at 108:2-109:10.
[65] *Id.* at 109:13-21; 110:9-13; 184:10-16.
[66] R. Doc. 123-2, Correy Delozier Dep. 87:16-88:3; R. Doc. 137 at 15-16.
[67] R. Doc. 123-2, Correy Delozier Dep. 108:2-109:24, 184:8-16; R. Doc. 123-3, Stephen Dauzat Dep. 97:5-23.
[68] R. Doc. 123-2, Correy Delozier Dep. 108:2-109:24; R. Doc. 123-3, Stephen Dauzat Dep. 96:7-11.

various tools and parts needed around the field;[69] checking for missing well signs on at least a weekly basis;[70] and receiving various supplies and chemicals needed in the field.[71]

The parties also dispute the maintenance work Plaintiff performed on the boats. The Defendants argue "all production work is performed on board the platforms themselves" and, if any work was done on boats, it constituted only minor maintenance.[72] S2 Energy points to the deposition of Bill Arnold who testified Delozier was a production operator whose job was on the platforms and storage facilities and not on boats.[73] S2 also points to Bill Arnold's testimony that the only time a production operator like Delozier would be on a boat is to get to a well or platform, and then to get back, and that his work was not done on the boats.[74] Wood Group and Dauzat point to the deposition of Matthew Compeaux who testified Delozier's job was to operate and maintain of oil & gas production equipment, not boats.[75] Defendants claim the testimony showed the maintenance Delozier performed on the boats was occasional and minor.[76] Wood Group and Dauzat point to Plaintiff's Third Amended Complaint and the Delozier time sheets to show his only duties with respect to the boats was to replace batteries and fuel filters, remove trash, unload groceries, and check the gauges.[77] S2 points to testimony by Bill Arnold explaining the only boat-related work done by operators is to change the oil and refuel.[78] Defendants argue that, even drawing all reasonable inferences in favor of the Plaintiff and viewing the

---

[69] R. Doc. 123-2, Correy Delozier Dep. 195:18-21.
[70] R. Doc. 123-2, Correy Delozier Dep. 108:2-109:24.
[71] R. Doc. 123-2, Correy Delozier Dep. 91:10-93:8.
[72] R. Doc. 105-11 at ¶¶ 10, 13; R. Doc. 105-4, Bill Arnold Dep. 15:13-16:1; R. Doc. 105-7, William Crooks Dep. 136:16-22.
[73] R. Doc. 110-4, Bill Arnold Dep. 15:13-18, 112:12-13.
[74] R. Doc. 110-2 at ¶¶ 21, 23; R. Doc. 110-4 at 110:12-22.
[75] R. Doc. 105-2, Matthew Compeaux Decl. ¶¶ 5-8.
[76] R. Doc. 105-11 at ¶¶ 10-11; R. Doc. 110-2 at ¶¶ 25-26.
[77] R. Doc. 68 at ¶ XII; R. Doc. 105-9, Correy Delozier Timesheets.
[78] R. Doc. 110-4, Bill Arnold Dep. 113:9-114:4.

evidence in the light most favorable to him, these activities do not elevate Delozier to seaman status under Fifth Circuit jurisprudence.

Plaintiff testified he was responsible for ensuring the S2 Energy boats ran properly and that the related tasks (e.g., fueling, cleaning, repairing) were routine, time-consuming, and substantial.[79] Plaintiff testified each work day, he would make sure the boats in service had gas in the tanks, check the oil, clean the windows, and make sure the boat was in proper shape for the day.[80] Plaintiff testified he checked the vessel's gauges and battery[81] and changed a battery on a boat "a couple of times."[82] He added oil if needed.[83] Plaintiff also testified he changed the lighting systems on the boats.[84] Plaintiff further testified he cleared the debris or "telltale" out of the outboard motors.[85]

It is clear the underlying material facts regarding Plaintiff's seaman status are disputed. Summary judgment on seaman status is rarely proper.[86] As noted above, the determination of seaman status is a mixed question of law and fact,[87] and even marginal cases must go to the jury.[88] In this case, reasonable persons could draw conflicting inferences from the evidence. As a result, seaman status is a question for the jury and summary judgment must be denied.

---

[79] R. Doc. 123-2, Correy Delozier Dep. 166:4-169:15, 170:13-24, 173:14-22.
[80] R. Doc 110-3, Correy Delozier Dep. 35:6-11.
[81] R. Doc. 123-2, Correy Delozier Dep. 169:16-170:12.
[82] *Id*. at 64:11-15.
[83] *Id*. at 168:5-17.
[84] *Id*. at 170:15-24.
[85] *Id*. at 171:16-172:3.
[86] *See Bouvier* v. Krenz, 702 F.2d at 90.
[87] *See St. Romain v. Industrial Fabrication & Repair Service, Inc.*, 203 F.3d at 378.
[88] *White v. Valley Line Co.*, 736 F.2d at 305. *See also Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 835 (5th Cir. 1982) (concluding there was enough evidence of seaman status to go to the jury where plaintiff and defendant presented conflicting evidence regarding plaintiff's work on vessels, rendering it a "close case").

## CONCLUSION

**IT IS ORDERED** that Defendants Stephen Dauzat and Wood Group PSN, Inc.'s July 27, 2020 motion for summary judgment,[89] adopted by Pioneer,[90] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant S2 Energy Operating, LLC's July 29, 2020 motion for summary judgment,[91] adopted by Pioneer,[92] Dauzat and Wood Group,[93] is **DENIED**.

**New Orleans, Louisiana, this 30th day of September, 2020.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[89] R. Doc. 105.
[90] R. Doc. 118.
[91] R. Doc. 110.
[92] R. Doc. 118.
[93] R. Doc. 144.