UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORREY DELOZIER, ET AL.,**     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-14094** |
| **S2 ENERGY OPERATING, LLC, ET AL.,**     **Defendants** | **SECTION: "E" (2)** |

### ORDER AND REASONS

Before the Court is Pioneer Production Services, Inc.'s ("Pioneer") motion for summary judgment on certain claims filed against it by Plaintiff Correy Delozier.[1]

The motion was adopted by Stephen Dauzat and Wood Group PSN, Inc. ("Wood Group").[2]

### BACKGROUND

Plaintiff Correy Delozier alleges he was working as an offshore operator, doing work on S2 Energy Operating, LLC's ("S2") fixed platforms and wells in the Timbalier Bay Field, when he sustained significant injuries by being "crushed" between an oil well and a crew boat during an attempted transfer.[3] Delozier and his wife, Valerie Delozier, filed suit against S2, Pioneer, Wood Group, and Dauzat seeking damages for his injuries and her loss of consortium.

---

[1] R. Doc. 49. Plaintiffs opposed the motion. R. Doc. 69. Plaintiffs filed a supplemental opposition. R. Doc. 97. Defendant Pioneer filed a reply in support of its motion. R. Doc. 113. Plaintiffs provided a supplemental response to Defendant Pioneer's statement of undisputed material facts. R. Doc. 135.
[2] R. Doc. 144. Pioneer incorrectly states "whether Delozier is a borrowed employee of S2 Energy Operating Company, LLC" is an issue to be decided in this motion. R. Doc. 49-2 at 7. Presumably, Dauzat and Wood Group joined in this motion seeking a positive answer to that question. As explained below, Delozier's borrowed servant status, and any underlying factual disputes, need not be addressed in connection with this motion.
[3] R. Doc. 68 at ¶ XIX.

1

## STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "An issue is material if its resolution could affect the outcome of the action."[5] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[6] All reasonable inferences are drawn in favor of the nonmoving party.[7] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[8]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[9] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[10]

---

[4] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[5] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[6] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[8] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[9] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[10] *Celotex*, 477 U.S. at 322–24.

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[11] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[12] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[13] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[14] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce

---

[11] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[12] *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[13] *Celotex*, 477 U.S. at 332–33.
[14] *Id.*

additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[15] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[16]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[17]

## LAW AND ANALYSIS

Pioneer seeks summary judgment in its favor on (1) Plaintiff's Jones Act claims because it is not Plaintiff's employer; (2) Plaintiff's Jones Act negligence claim; and (3) Plaintiff's Jones Act unseaworthiness claim.[18]

On July 27, 2020, Dauzat and Wood Group filed a motion for summary judgment that Plaintiff was not a Jones Act seaman at the time of his accident.[19] On July 29, 2020, S2 filed a motion for summary judgment that Plaintiff was not a Jones Act seaman at the

---

[15] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[16] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[17] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[18] R. Doc. 49.
[19] R. Doc. 105. This motion was adopted by Pioneer. *See* R. Doc. 118.

4

time of his accident.[20] The Court denied both motions because the underlying material facts necessary to determine Plaintiff's seaman status are disputed.[21] For purposes of determining this motion, the Court will assume Plaintiff was a Jones Act seaman at the time of the incident.

### I. Pioneer is not entitled to summary judgment that it has no Jones Act liability to Plaintiff.

There is no dispute Pioneer hired Delozier in March 2018 to be a production operator[22] and that Pioneer was his payroll employer, [23] sometimes referred to as the nominal employer or general employer. There also is no dispute Pioneer contracted with S2 to provide employees, including Delozier, to work in the Timbalier Bay Field.[24] Even though Pioneer is Plaintiff's payroll employer, Pioneer moves for summary judgment on Plaintiff's Jones Act claims arguing that, because Plaintiff was a borrowed employee of S2 at the time of the incident, Plaintiff cannot as a matter of law recover against Pioneer under the Jones Act. The crux of Pioneer's argument is the Plaintiff can have only one Jones Act employer. As a result, Pioneer's memorandum in support of its motion focuses solely on the factors to be considered in determining whether Plaintiff was a borrowed employee of S2. Pioneer's reliance on Plaintiff's status as S2's borrowed employee is misplaced.

The borrowed servant doctrine has been around in maritime law since at least 1909.[25] As the Fifth Circuit explained in *Spinks v. Chevron Oil Co.*, seamen who are

---

[20] R. Doc. 110. This motion was adopted by Pioneer. *See* R. Doc. 118. This motion was also adopted by Dauzat and Wood Group. *See* R. Doc. 144.
[21] R. Doc. 154.
[22] R. Doc. 49-1 at ¶ 1; R. Doc. 69-1 at 1.
[23] R. Doc. 49-1 at ¶ 13-14 (admitting Pioneer paid and handled Delozier's payroll matters).
[24] R. Doc. 68 at ¶ VI; R. Doc. 105-11 at ¶ 2; R. Doc. 110-2 at ¶¶ 1, 3; R. Doc. 137 at 2; R. Doc. 138 at 2.
[25] *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909).

borrowed employees do not automatically "cease[] to be [their] immediate employer's servant."[26] In *Spinks*, the injured seaman's nominal employer, Labor Services, Inc., was found to be *one* of his Jones Act employers.[27] The Fifth Circuit rejected dictum in the Supreme Court's decision in *Cosmopolitan Shipping Co. v. McAllister* that "under the Jones Act only one person, firm, or corporation can be sued as [an] employer."[28] Instead, the *Spinks* court reasoned a plaintiff's Jones Act rights would be undermined if an injured seaman were forced to "speculate at his peril on whether the trial court ultimately will find him a borrowed employee of the shipowner, or an employee of his immediate employer . . . ."[29] The Fifth Circuit did not disagree with the trial court's finding the plaintiff was a borrowed employee of Chevron Oil Company, but nevertheless held Labor Services remained his Jones Act employer.[30] The court said, "We see nothing offensive in suing an immediate employer under the Act, or even both employers in the alternative. The defendants can sort out which between them will bear the final cost of recovery, either through common law indemnity or contribution principles, or contractual provisions, as in the instant case."[31] Similarly, later decisions from our district allowed plaintiffs to sue a number of employers, "forcing them to argue their respective culpability to the jury."[32]

The Fifth Circuit reaffirmed its ruling that a seaman may have more than one Jones Act employer in *Guidry v. S. La. Contractors, Inc.*[33] Citing *Spinks*, the *Guidry* court said

---

[26] *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975) (citing RESTATEMENT (SECOND) OF AGENCY § 227 cmt. b (1958), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 337-38 (5th Cir. 1997).
[27] *Id.* at 225.
[28] 337 U.S. 783, 791 (1949).
[29] *Spinks*, 507 F.2d at 225.
[30] *Id.* ("We do not quarrel with the trial court's finding that Chevron had sufficient control over him to be a borrowing employer. We merely hold that under the Jones Act, Labor Services remained his employer.").
[31] *Id.* (citations omitted).
[32] *Hall v. Diamond M Co.*, 635 F.Supp. 362, 364 (E.D. La. 1986).
[33] *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980).

that "even if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes."[34] Agreeing a seaman may have more than one Jones Act employer, the *Guidry* court stated a seaman is entitled to "look no further than the signature on his check."[35] In *Guidry*, the Court explained that, to be relieved of liability, the payroll employer must have "divested itself of all control over the employee."[36]

In *Ogden v. GlobalSantaFe Offshore Services*, another section of this court applied the *Spinks* and *Guidry* holdings.[37] In that case, two defendants sought summary judgment arguing they were not the plaintiff's Jones Act employers.[38] The court explained:

> There is no one test for determining whether a defendant may be properly considered a Jones Act employer. The analysis largely depends on which party or entity is being sued. Courts have provided various tests and lists of factors that should be considered. For instance, the Fifth Circuit explained that when a seaman sues his payroll employer, the question is whether that employer "has divested itself of all control over the employee." *Guidry,* 614 F.2d at 454. On the other hand, when a court is deciding whether the borrowed servant doctrine applies, and thus a non-payroll entity can be considered the plaintiff's employer, the court considers various factors. *See Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312–13 (5th Cir.1969).[39]

This Court is left with no doubt the *Spinks* and *Guidry* complete "divestment of control" analysis applies when deciding whether a plaintiff's payroll employer may be held liable under the Jones Act.[40]

---

[34] *Id*. at 452.
[35] *Id*. at 454.
[36] *Id*.
[37] *Ogden v. GlobalSantaFe Offshore Serv.*, 31 F.Supp.3d 832, 842-43 (E.D. La. July 14, 2014).
[38] *Id*. at 836.
[39] *Id*. at 843.
[40] In a case focusing on whether the borrowing employer may be sued in tort, *Capps v. N.L. Baroid-NL Indus., Inc.*, the plaintiff appealed the district court's granting of summary judgment that he was a borrowed employee who could not sue his borrowing employer in tort. The Fifth Circuit confirmed there can be more than one Jones Act employer. In that case, the court held the lending employer need not completely sever

7

At trial, Plaintiff will bear the burden of proving all elements of his Jones Act claims, including that he is a Jones Act seaman and, if so, that Pioneer is one of his Jones Act employers. As the moving party on summary judgment, Pioneer bears the burden of bringing forth the undisputed facts to establish Pioneer has divested itself of all control over the Plaintiff and, as a result, Pioneer is entitled to judgment as a matter of law that it is not Plaintiff's Jones Act employer.[41]

The Court may grant summary judgment only if the moving party has met its ultimate burden of persuading the court there are no genuine issues of material fact for trial.[42] An examination of Pioneer's statement of undisputed facts in support of its motion for summary judgment reveals no statement of undisputed material fact that would lead the Court to conclude Pioneer had divested itself of all control over Plaintiff.[43] The undisputed facts do include a statement that Pioneer hired the Plaintiff and that Plaintiff was Pioneer's "payroll employee,"[44] but these facts support a finding that Pioneer was Plaintiff's Jones Act employer. The statement of undisputed facts does not include statements regarding who signed the Plaintiff's checks, who withheld taxes and social security payments from his salary, whether Pioneer could fire him, or the extent of Pioneer's control over him.[45] Instead, the undisputed facts listed by Pioneer focus on whether Plaintiff is a borrowed employee of S2.[46] These facts are not determinative of

---

his relationship with the employee for another to be considered the employee's borrowing employer, reasoning, "Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers." 784 F.2d 615, 617 (5th Cir. 1986).

[41] *Guidry*, 614 F.2d at 454; *Ogden*, 31 F.Supp.3d at 843.
[42] *Celotex*, 477 U.S. at 332-33, 333 n.3; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[43] R. Doc 49-1.
[44] R. Doc. 49-1 at ¶¶ 1, 5.
[45] *Spinks*, 507 F.2d at 225.
[46] R. Doc. 49-1. *See* ¶¶ 1, 3, 4, 5, 12, 13, and 14.

whether Plaintiff is the Jones Act employee of Pioneer. Pioneer has not met its burden of persuading the Court there are no genuine issues of fact and it is entitled to judgment as a matter of law that it is not Plaintiff's Jones Act employer.

## II. Pioneer is not entitled to summary judgment that it has no Jones Act liability for negligence.

Pioneer moves for summary judgment that it has no Jones Act liability to the Plaintiff for negligence because it is not Plaintiff's Jones Act employer.[47] For the reasons stated in Section I above, Pioneer may be Plaintiff's Jones Act employer, and liable for Jones Act negligence, even if Plaintiff was the borrowed servant of S2. Pioneer also argues it is entitled to summary judgment because Plaintiff cannot meet his burden to prove Pioneer was negligent or caused the accident.

The Court is assuming for purposes of deciding this motion that Plaintiff is a Jones Act seaman. Under the Jones Act, a seaman has a cause of action against his employer for injuries sustained as a result of his employer's negligence.[48] A seaman may recover damages under the Jones Act if his employer's negligence was the legal cause, in whole or in part, of his injury.[49] At trial, Plaintiff must establish Pioneer had a duty to provide him a reasonably safe place to work, Pioneer breached that duty, and Pioneer's negligence caused his injuries.[50] Plaintiff bears a "featherweight" burden of proof[51] to establish causation for a Jones Act negligence claim and need only show that his employer contributed to his injuries "in the slightest degree."[52]

---

[47] R. Doc. 49-2 at 23.
[48] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).
[49] *Id.*
[50] *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).
[51] *Chisolm v. Sabine Towing & Transp. Co.*, 679 F.2d 60, 62 (5th Cir. 1982).
[52] *Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992).

Summary judgment is rarely granted on Jones Act negligence claims.[53] "Because of the policy of providing an expansive remedy for seamen, submission of Jones Act claims to a [factfinder] requires a very low evidentiary threshold; even marginal claims are properly left for [factfinder] determination."[54] Summary judgment would only be warranted in the complete absence of proof of an essential element of Plaintiff's case.[55]

Plaintiff points to the record to show there are disputed issues of material fact with respect to the training provided to him regarding personnel transfers.[56] The jury will determine whether Pioneer's actions or inactions contributed to Plaintiff's injuries "in the slightest degree."[57] This determination is ultimately for the trier of fact.[58] Comparative fault is applicable to Jones Act negligence cases.[59] Even if the jury were to conclude Pioneer's alleged negligence in some way caused Plaintiff's injuries, the jury also would have to determine whether and to what extent the Plaintiff's own actions or inactions contributed to his injuries.[60] "A jury is well suited for resolving this type of fact-intensive dispute based on well-settled legal principles."[61]

The Court is mindful of the Fifth Circuit's admonition that "the use of summary judgment is rarely appropriate in negligence" cases[62] because the trier of fact must determine the reasonableness of conduct and whether it constitutes negligence, even

---

[53] *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005).
[54] *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978) (citing *Barrios v. La. Construction Materials Co.*, 465 F.2d 1157, 1162 (5th Cir. 1972)).
[55] *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).
[56] R. Doc. 69-1 at 4-5.
[57] *Gavagan*, 955 F.2d at 1019.
[58] *Leonard*, 581 F.2d at 524.
[59] *Gavagan*, 955 F.2d at 1018.
[60] *Gautreaux*, 107 F.3d at 339.
[61] *Sartin v. Cliff's Drilling Co.*, No. 03-1825, 2004 WL 551209, at 1 (E.D.La. Mar. 18, 2004).
[62] *Davidson v. Stanadyne*, 718 F.2d 1334, 1338 (5th Cir. 1983).

when the facts are undisputed.[63] The Court denies summary judgment on Plaintiff's Jones Act negligence claim.

### III. Pioneer is entitled to summary judgment that it is not liable to Plaintiff under the Jones Act for unseaworthiness.

Plaintiff was injured on June 22, 2018 while transferring from an S2 boat, the MISS MICHELLE, to the S2 Energy SF4 platform.[64] Pioneer moves for summary judgment that it has no Jones Act liability to the Plaintiff based on unseaworthiness because it is not Plaintiff's Jones Act employer.[65] For the reasons stated in Section I above, Pioneer may be one of Plaintiff's Jones Act employer and be liable for the unseaworthiness of the MISS MICHELLE, even if Plaintiff is S2's borrowed employee. Alternatively, Pioneer moves for summary judgment on the unseaworthiness claim because the facts will show Pioneer was not the owner or operator of the MISS MICHELLE.

For purposes of deciding this motion, the Court will assume Plaintiff is a Jones Act seaman. Independent from a Jones Act claim for negligence, a seaman may claim his injuries were caused by the unseaworthiness of a vessel under general maritime law. A vessel is deemed unseaworthy if a condition of the vessel presents an unreasonable risk of harm to the seaman.[66] Generally, the owner of a vessel has "an absolute nondelegable duty to provide a seaworthy vessel" and is the appropriate defendant to an unseaworthiness claim.[67]

---

[63] *Id.* (citing *Gauk v. Meleski*, 346 F.2d 433 (5th Cir.1965)).
[64] R. Doc. 68 at ¶¶ XVII, XIX, XX; R. Doc. 105-11 at ¶ 14; R. Doc. 110-2 at ¶ 2; R. Doc. 137 at 18; R. Doc. 138 at 2.
[65] R. Doc. 49-2 at 26.
[66] *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).
[67] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).

Plaintiff alleges in his Third Amended Complaint the vessels used in the Timbalier Bay Field were owned and operated by S2.[68] Pioneer agrees it is an undisputed fact that both the MISS MICHELLE and the SF4 platform were owned and operated by S2.[69] Plaintiff concedes Pioneer was not the MISS MICHELLE's owner and has never argued Pioneer was the bareboat charterer[70] of the MISS MICHELLE. Instead, Plaintiff argues Pioneer is nonetheless liable to him for unseaworthiness as Pioneer is an "operator" of the MISS MICHELLE, even though it is not a bareboat charterer.[71]

It is clear an unseaworthiness claim may be brought only against the owner or demise charterer of a vessel. "The appropriate defendant in an unseaworthiness case is the person who had operational control of the ship at the time the condition was created or the accident occurred."[72] "This is normally the shipowner, but a demise charter also normally invests the charterer with powers of control so as to place upon him the duties of unseaworthiness."[73] Whether a non-owner of a ship is a demise charterer is a question of control.[74]

Most often, liability for seaworthiness is raised by an owner seeking to avoid liability because control of the vessel has been transferred to another. A long line of cases

---

[68] R. Doc. 68 at ¶ VIII.
[69] R. Doc. 49-1 at ¶ 10.
[70] In *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993), the Fifth Circuit explained the different types of charters and their relevance to unseaworthiness: "In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term "bareboat"). Consequently, the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract. The demise charterer is therefore responsible *in personam* for the negligence of the crew and the unseaworthiness of the vessel." *Id.* (citations omitted). *See also* Thomas J. Schoenbaum, *Unseaworthiness: elements and defenses*, 1 ADMIRALTY AND MARITIME LAW § 6:25 (6th ed.) ("If the charterer has taken over complete 'possession, command and navigation of the vessel,' he is the proper defendant.").
[71] R. Doc. 69 at 27-28.
[72] Thomas J. Schoenbaum, *Unseaworthiness: elements and defenses*, 1 ADMIRALTY AND MARITIME LAW § 6:25 (6th ed.).
[73] *Id.* (citing *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962)).
[74] *Guzman*, 369 U.S. at 699.

has held the transfer of a portion of a vessel's owner's control over a vessel will not relieve the owner of liability for unseaworthiness. For example, in *Guzman*, a shipowner attempted to escape liability for his vessel's unseaworthiness by arguing he demised the vessel to another company—establishing a demise charter.[75] The Supreme Court rejected this argument holding a demise exists only when an owner "completely and exclusively relinquish[es] 'possession, command, and navigation' thereof to the demisee."[76] The Court further held that the control would need to be "tantamount to, though just short of, an outright transfer of ownership."[77]

Plaintiff, in effect, argues the transfer of the function of driving and piloting a vessel renders the transferee an "operator" responsible for seaworthiness of the vessel.[78] The Court disagrees. The transfer of a portion of a vessel owner's control over the vessel will not create liability for unseaworthiness in the transferee. In the case most similar to this one, *Martin v. Walk, Haydel & Associates*, an oil company (LOOP) contracted with the plaintiff's employer (WHA) to act as dredging inspectors.[79] At the bench trial, WHA argued it could not be liable for unseaworthiness because it was not a demise charterer of the LOOP flatboats the WHA inspectors used to access the dredging sites approximately 3 miles from shore.[80] "WHA had no authority to take the boats anywhere other than to the dredge on which they were working. True command of the boats remained with LOOP. LOOP saw to the maintenance, repair and fueling of the boats. While WHA's employees piloted and navigated the boats to and from the dredge, this use is insufficient to create a

---

[75] *Id.* at 698.
[76] *Id.* at 699 (quoting *United States v. Shea*, 152 U.S. 178, 188 (1894)).
[77] *Id.*
[78] R. Doc. 69 at 28.
[79] *Martin v. Walk, Haydel & Associates, Inc.*, 742 F.2d 246, 247 (5th Cir. 1984).
[80] *Id.* at 247.

13

demise charter."[81] The Fifth Circuit applied *Guzman* and held that "a mere user" of flatboats was not sufficiently in control of the vessels to be deemed a demise charterer.[82] Because WHA was neither the owner nor the demise charterer of the flatboats, the Fifth Circuit overturned the district court's judgment on this issue and found WHA could not be held liable for unseaworthiness.

Plaintiff relies on *Baker v. Raymond Int'l, Inc.*[83] to argue an "operator" may be held liable for unseaworthiness.[84] The issue in *Baker* was whether the vessel's owner could avoid liability by proving a bareboat charter existed, not whether the bareboat charterer or other transferee, such as Pioneer, was liable.[85] The Fifth Circuit held the vessel and the vessel's owner could be liable for damage done by unseaworthiness, even while the vessel was in the control of a bareboat charterer.[86] This case does not support Plaintiff's argument. In fact, *Baker* highlights the importance of there being a bareboat charter:

> A bareboat or demise charter (hereinafter called a bareboat charter), whereby the charterer assumes "full possession and control of the vessel" constitutes the only form of charter that purports to invest temporary powers of ownership in the charterer and, therefore, constitutes the only conceivable basis on which the vessel owner could seek to escape liability for the unseaworthiness of his vessel.[87]

Pioneer was neither the owner nor the demise charterer of the MISS MICHELLE. The Court grants summary judgment in favor of Pioneer and against the Plaintiff on Plaintiff's unseaworthiness claim.

---

[81] *Id.* at 249.
[82] *Id.*
[83] 656 F.2d 173 (5th Cir. 1981).
[84] R. Doc. 69 at 27.
[85] *Baker*, 656 F.2d at 176.
[86] *Id.* at 183 (citing *Reed v. Steamship Yaka*, 373 U.S. 410, 411 n.1 (1963)).
[87] *Id.* at 181-82 (citations omitted).

14

## CONCLUSION

**IT IS ORDERED** that Defendant Pioneer Production Services, Inc.'s motion for summary judgment,[88] adopted by Dauzat and Wood Group,[89] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that summary judgment on Plaintiff's Jones Act claims, including Jones Act negligence claims, against Pioneer Production Services, Inc. is **DENIED**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Pioneer Production Services, Inc. and against Plaintiff on Plaintiff's unseaworthiness claim.

New Orleans, Louisiana, this 30th day of September, 2020.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[88] R. Doc. 49.
[89] R. Doc. 144.