## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORREY DELOZIER, ET AL.,**<br>  **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-14094** |
| **S2 ENERGY OPERATING, LLC, ET AL.,**<br>  **Defendants** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Wood Group PSN, Inc. ("Wood Group") that Plaintiff Correy Delozier has no Jones Act claim against it because Wood Group is not his employer.[1]

## BACKGROUND

Correy Delozier alleges he was working as an offshore operator, doing work on S2 Energy Operating, LLC's ("S2") fixed platforms and wells in the Timbalier Bay Field, when he sustained significant injuries by being "crushed" between an oil well and a crew boat during an attempted transfer.[2] Delozier and his wife, Valerie Delozier, filed suit against S2, Pioneer Production Services, Inc. ("Pioneer"), Wood Group, and Stephen Dauzat seeking damages for his injuries and her loss of consortium. Correy Delozier sued Wood Group under the Jones Act because he claims to be a borrowed employee of Wood Group.[3]

Correy Delozier was nominally employed by Pioneer as an operator.[4] Pioneer contracted with S2 to provide employees, including Delozier, to work in the Timbalier Bay

---

[1] R. Doc. 101. Plaintiffs opposed the motion. R. Doc. 122. Plaintiffs provided a supplemental response to Defendant Wood Group PSN, Inc.'s statement of undisputed material facts. R. Doc. 136. Defendant Wood Group PSN, Inc. replied to Plaintiffs' opposition. R. Doc. 143.
[2] R. Doc. 68 at ¶ XIX.
[3] *Id.* at ¶ XXXV.
[4] R. Doc. 68 at ¶ VI; R. Doc. 105-11 at ¶ 1, 3, 6; R. Doc. 110-2 at ¶ 1; R. Doc. 137 at 2; R. Doc. 138 at 2.

Field.[5] Delozier alleges he was a seaman and Wood Group was one of his Jones Act employers.[6] Because Delozier admits he was hired by Pioneer,[7] the only way he can be found to be an employee of Wood Group is as a borrowed employee. To determine this, the Court must evaluate whether Wood Group exercised a significant supervisory role over Delozier's work such that Wood Group is his borrowing employer.

## STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "An issue is material if its resolution could affect the outcome of the action."[9] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[10] All reasonable inferences are drawn in favor of the nonmoving party.[11] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[12]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[13] If the

---

[5] R. Doc. 68 at ¶ VI; R. Doc. 105-11 at ¶ 2; R. Doc. 110-2 at ¶¶ 1, 3; R. Doc. 137 at 2; R. Doc. 138 at 2.
[6] R. Doc. 68 at ¶ XXXIV.
[7] *Id.* at ¶ VI.
[8] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[9] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[10] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[11] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[12] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[13] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[14]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[15] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[16] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving

---

[14] *Celotex*, 477 U.S. at 322–24.

[15] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[16] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

party."[17] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[18] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[19] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[20]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[21]

## ANALYSIS AND LAW

Wood Group seeks summary judgment in its favor on Correy Delozier's Jones Act claims.[22] On July 27, 2020, Dauzat and Wood Group filed a motion for summary judgment that Delozier was not a Jones Act seaman at the time of his accident.[23] On July

---

[17] *Celotex*, 477 U.S. at 332–33.
[18] *Id.*
[19] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[20] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[21] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[22] R. Doc. 101 at 4.
[23] R. Doc. 105. This motion was adopted by Pioneer. *See* R. Doc. 118.

29, 2020, S2 filed a motion for summary judgment that Delozier was not a Jones Act seaman at that time.[24] The Court denied both motions because the underlying material facts necessary to determine Delozier's seaman status are disputed.[25] For purposes of determining this motion, the Court will assume Delozier was a Jones Act seaman at the time of the incident.

At trial, Delozier will bear the burden of proving all elements of his Jones Act claims, including that he was a Jones Act seaman and, if so, that Wood Group was one of his Jones Act employers. As the moving party on summary judgment, Wood Group bears the burden of showing the undisputed facts establish that Wood Group was not Delozier's borrowing employer and, as a result, Wood Group is entitled to judgment as a matter of law that it is not liable to Delozier under the Jones Act.[26]  In ruling on a motion for summary judgment, the Court "must indulge every *reasonable* inference from those facts in favor of the party opposing the motion."[27] For summary judgment to be proper, the facts must point so overwhelmingly in favor of one party that the Court believes a reasonable fact-finder could not reach a contrary verdict.[28]

Under the Jones Act, a seaman may sue his employer for negligence resulting in his personal injury.[29] The Jones Act applies only if an employment relationship exists.[30] Wood Group and Plaintiffs agree Pioneer was Delozier's payroll employer.[31] Wood Group argues the undisputed facts show no employment relationship has ever existed between

---

[24] R. Doc. 110. This motion was adopted by Dauzat and Wood Group. *See* R. Doc. 144.
[25] R. Doc. 154.
[26] *Guidry*, 614 F.2d at 454; *Ogden*, 31 F.Supp.3d at 843.
[27] *Hall v. Diamond M Co.*, 732 F.2d 1246, 1249–50 (5th Cir. 1984) (emphasis in original) (internal quotation marks and citation omitted).
[28] *Id*. at 1250.
[29] *See* 46 U.S.C. § 30104.
[30] *See id.*
[31] R. Doc. 101-15 at ¶ 7; R. Doc. 122-1 at 2. *See* R. Doc. 49-3, Correy Delozier Dep. 70:3-15.

Wood Group and Delozier.[32] Because Wood Group was not Delozier's nominal employer (also known as the original, lending, and payroll employer), the Court must evaluate whether Wood Group was his borrowing employer.[33] The borrowed employer doctrine has been around in maritime law for over a century.[34] Generally, the borrowed employee doctrine is the "functional rule that places the risk of a worker's injury on his actual rather than his nominal employer."[35] It is possible, however, for a seaman to sue more than one employer under the Jones Act.[36] The Fifth Circuit has held that a plaintiff's Jones Act rights would be undermined if an injured seaman were forced to "speculate at his peril on whether the trial court ultimately will find him a borrowed employee of the shipowner, or an employee of his immediate employer . . . ."[37]

Whether an injured plaintiff is a borrowed employee is a matter of law for the district court to decide, though some cases involve factual disputes that must be resolved by the fact-finder before the court can make its legal determination.[38] In evaluating whether Wood Group controlled and directed Delozier's work, "a careful distinction must be made between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."[39]

---

[32] R. Doc. 101 at 4.

[33] *See Perron v. Bell Maintenance and Fabricators, Inc.*, 970 F.2d 1409, 1412 (5th Cir. 1992) (explaining when a borrowed servant becomes the employee of a borrowing employer).

[34] *Standard Oil Co. v. Anderson*, 212 U.S. 215 (1909).

[35] *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir. 1981).

[36] *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975)).

[37] *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975) (citing RESTATEMENT (SECOND) OF AGENCY § 227 cmt. b (1958)), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 337-38 (5th Cir. 1997).

[38] *See Delahoussaye v. Performance Energy Services, L.L.C.*, 734 F.3d 389, 393 (5th Cir. 2013); *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677 (5th Cir. 1993).

[39] *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1969) (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222 (1909)). *See Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-cv-366, 2014 WL 5113322 at *10 (E.D. La. Oct. 10, 2014). *See also Ancelet v. National R.R. Passenger Corp.*, 913 F. Supp. 968, 971 (E.D. La. 1995) (citing *Lindsey v. Louisville & Nashville Railroad Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985)).

The Court must determine whether Wood Group, as the borrowing employer, could authoritatively direct Delozier and not merely recommend action to Delozier.[40]

In *Ruiz v. Shell Oil Co.*, the Fifth Circuit set forth the analysis for courts to use when determining whether a person qualifies as a borrowed employee.[41] Courts weigh the following nine factors:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?[42]

While control tends to be the "most universally accepted standard" for determining borrowed employee status,[43] no single factor or combination of factors is determinative.[44]

"[C]ourts place the most emphasis on the first factor, control over the employee."[45] Control depends on who the employee is answerable to, not always the employee's direct supervisor.[46] Determining control in a potential borrowed employee relationship helps

---

[40] *Ruiz*, 413 F.2d at 312-13.

[41] 413 F.2d 310, 312–13 (5th Cir. 1969).

[42] *Brown*, 984 F.2d at 676 (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988), *reh'g granted on other grounds*, 841 F.2d 572 (5th Cir. 1988).

[43] *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969).

[44] *See Brown*, 984 F.2d at 676.

[45] *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 617 (citing *Ruiz*, 413 F.2d at 213; and *Hebron v. Union Oil Co. of Ca.*, 634 F.2d 245, 247 (5th Cir. 1981) (per curium)).

[46] *See West v. Kerr-McGee Group*, 765 F.2d 526, 530-31 (5th Cir. 1985) ("The deposition testimony indicates that although West was not always under direct supervision, he was answerable to Kerr-McGee supervisory personnel.")

impute liability to the appropriate defendant.[47] The inquiry rests on "whether someone has the power to control and direct another person in the performance of his work."[48] In large projects like the one in the Timbalier Bay Field, there must be cooperation and coordination between the various contractors and subcontractors so that the overall mission can be accomplished.[49] "Such direction in furtherance of a larger, final product is not the level of control that makes the subcontractor's employees borrowed servants."[50]

The summary judgment evidence presented reveals material facts are in dispute with respect to who was Delozier's supervisor and who had control over his work at the time of his accident. Delozier and other witnesses offered testimony that could support a finding that S2 was Delozier's borrowing employer. Delozier testified S2 employee Darryl Shuff was his "boss" and the "lead operator."[51] In his deposition, Shuff testified that he considered himself to be Delozier's supervisor and boss.[52] Delozier testified Shuff could fire him from the field.[53] Delozier explained, "[Darryl Shuff] was the boss. I mean, bosses have the authority to get rid of people."[54] Delozier admitted, however, that nobody ever told him Shuff could fire him.[55] Delozier testified S2 employee Craig Hill was his foreman in the field.[56] Delozier testified, if a major issue came up that was substantial enough to report, it would be reported to Hill.[57]

---

[47] *See Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir. 1977) (discussing when control should be the predominate factor in a *Ruiz* borrowed employee analysis).
[48] *Hebron v. Union Oil Co. of Cal.*, 634 F.2d 245, 247 (5th Cir. 1981) (citing *Gaudet*, 562 F.2d at 355).
[49] *Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-cv-2131, 1997 WL 582821 at *4 (E.D. La. Sept. 19, 1997).
[50] *Id.*
[51] Correy Delozier Dep. 14:11-17; 78:3-6.
[52] R. Doc. 143-2, Darryl Shuff Dep. 52:14-21.
[53] Correy Delozier Dep. 132:16-18.
[54] *Id.* at 188:19-25.
[55] *Id.* at 189:1-3.
[56] *Id.* at 41:1-2.
[57] *Id.* at 80:8-14.

The testimony of Delozier and other witnesses could support a finding that Wood Group also was Delozier's borrowing employer. Delozier testified William Crooks was the "crew leader" in the Timbalier Bay Field.[58] Crooks testified he had control over Delozier in the field because he, Crooks, was "in charge" and had control over the work done on the platforms.[59] Delozier in his testimony explained the day-to-day hierarchy on the platform: "Darryl [Shuff] would give whatever needed to be done that day to Bill Crooks, and Bill Crooks would delegate. It was like a chain of command. [Shuff] would tell [Crooks] what we needed to do, and then Bill would - - we'd have our little meeting and Bill would tell us where we was going."[60] Wood Group concedes it, at the least, acted as an intermediary for S2's orders.[61]

Delozier testified that he took instruction from both Wood Group employee William Crooks and from S2 employee Darryl Shuff.[62] Delozier testified "everybody would tell me what to do."[63] On June 22, 2018, the date of the accident, Delozier was with Stephen Dauzat.[64] Delozier testified Wood Group employee Dauzat was above Wood Group employee Crooks,[65] and that he also took instructions from Wood Group employee Dauzat because Dauzat "could give orders just like Darryl [Shuff] could."[66] Shuff testified that Dauzat was the lead who was around Delozier "almost every day."[67] Dauzat testified he was Delozier's superior and gave orders with respect to what Delozier was supposed to

---

[58] *Id*. at 15:4-7.
[59] R. Doc. 122-5, William Crooks Dep. 138:3-139:8.
[60] Correy Delozier Dep. 20:15-22.
[61] R. Doc. 143 at 6.
[62] Correy Delozier Dep. 29:14-23.
[63] *Id*. at 78:23-79:10.
[64] R. Doc. 122-3, Tom Wimberly Dep. 48:19-49:1.
[65] Correy Delozier Dep. 182:16-24.
[66] *Id*. at 30:7-11.
[67] R. Doc. 122-6, Darryl Shuff Dep. 47:13-20.

do once he got on the platform.[68] Shuff testified Delozier would only operate the boats if given permission by the more experienced operator working with him at the time, presumably Dauzat.[69]

It is unclear which entity took responsibility for training Delozier. Joshua Chaney, Wood Group's corporate representative, testified Wood Group did not train Stephen Dauzat on how to train Delozier because it was not Dauzat's job.[70] In contrast, Plaintiff points to the testimony of Matthew Compeaux, Pioneer's president, and William Crooks, a senior Wood Group operator, that Wood Group trained Delozier because Wood Group's experienced operators mentored new employees in the Timbalier Bay Field to ensure they were doing their jobs correctly.[71] Crooks testified he was the seasoned operator who provided Delozier hands-on training in the field.[72] Crooks also testified no seasoned operators from Pioneer provided any hands-on training to Delozier.[73] Delozier testified that Crooks taught him how to get off the boats in rough waters.[74]

It is undisputed Stephen Dauzat was an employee of Wood Group at the time of Delozier's accident.[75] It also is clear Dauzat's supervisory role in the Timbalier Bay Field was increasing at that time, and he was actively preparing for a higher level supervisory job with S2. Delozier testified Dauzat was transitioning to be S2's lead operator in the field[76] because Darryl Shuff had been promoted to foreman.[77] Tom Wimberly, S2's corporate representative, testified Dauzat was promoted to a "lead operator position" to

---

[68] R. Doc. 122-7, Stephen Dauzat Dep. 127:21-128:9.
[69] R. Doc. 122-6, Darryl Shuff Dep. 68:4-16.
[70] R. Doc. 122-12, Joshua Chaney Dep. 67:17-22.
[71] R. Doc. 122-9, Matthew Compeaux Dep. 18:12-15; R. Doc. 122-5, Will Crooks Dep. 67:16-68:13.
[72] R. Doc. 122-5, William Crooks Dep. 67:16-68:13.
[73] *Id*. at 69:19-22.
[74] Correy Delozier Dep. 100:19-101:3.
[75] R. Doc. 105-6, Stephen Dauzat Declaration ¶ 3.
[76] Correy Delozier Dep. 162:16-19.
[77] *Id*. at 78:3-14.

replace S2 employee Shuff around June 16, 2018,[78] less than a week before Delozier's accident.[79] Shuff explained that Dauzat was in a trial period for "maybe a week" before Delozier was injured.[80] Dauzat was reporting to Craig Hill and Darryl Shuff of S2, who were evaluating his ability to perform the lead operator job.[81] It appears Dauzat may have assumed some or all of Shuff's supervision of Delozier during the transition period. Tom Wimberly added that Dauzat eventually began to do the job permanently and was still an S2 employee working as lead operator in the Timbalier Bay Field at the time of Dauzat's deposition on June 23, 2020.[82]

There are material facts in dispute with respect to who had control over Delozier: Wood Group, S2, or both. Some of the other *Ruiz* factors to be considered in this analysis are clear-cut. For example, with respect to the sixth *Ruiz* factor, Delozier admits his tools and places of work were provided by Pioneer and S2, not Wood Group.[83] Under the ninth *Ruiz* factor, Plaintiffs concede Delozier received his paychecks from Pioneer[84] and Pioneer was Delozier's payroll employer.[85] These factors would weigh against a finding of Wood Group's borrowed employer status, but other *Ruiz* factors are less clear. These less clear factors, combined with the disputed facts about who had control over Delozier and the work that he was performing, render the Court unable to determine whether Delozier was a borrowed employee of Wood Group on summary judgment.

At this point, all reasonable inferences must be drawn in favor of the nonmoving party, Delozier. Summary judgment may be granted only if, even viewing the evidence in

---

[78] R. Doc. 122-3, Tom Wimberly Dep. 170:15-23.
[79] *Id*. at 21:9-24; 169:7-12.
[80] R. Doc. 122-6, Darryl Shuff Dep. 48:7-14.
[81] R. Doc. 122-3, Tom Wimberly Dep. 172:1-173:15.
[82] *Id*. at 21:22-22:3.
[83] R. Doc. 122 at 6.
[84] R. Doc. 122 at 19. Plaintiffs also do not argue Wood Group reimbursed Pioneer for Delozier's pay.
[85] R. Doc. 122-1 at 2.

the light most favorable to Delozier, no reasonable trier of fact could find that he was the borrowed employee of Wood Group. The Court finds that, considering the summary judgment evidence presented in the light most favorable to Delozier, a reasonable trier of fact could find that Delozier was Wood Group's borrowed employee.

Wood Group is not entitled to summary judgment as a matter of law that Delozier is not its borrowed employee and that Delozier has no Jones Act claim against Wood Group.

## CONCLUSION

**IT IS ORDERED** that Wood Group PSN, Inc.'s motion for summary judgment is **DENIED**.[86]

**New Orleans, Louisiana, this 5th day of October, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[86] R. Doc. 101.