UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORREY DELOZIER, ET AL.,**<br>     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-14094** |
| **S2 ENERGY OPERATING, LLC, ET AL.,**<br>     **Defendants** | **SECTION: "E" (2)** |

**ORDER AND REASONS**

Before the Court are two motions for summary judgment on the complaint in intervention[1] filed by Manufacturers Alliance Insurance Co. ("MAI"): (1) the motion filed by Defendant S2 Energy Operating, LLC ("S2") on May 12, 2020;[2] and (2) the motion filed by Defendants Stephen Dauzat and Wood Group PSN, Inc. ("Wood Group") on July 21, 2020.[3]

**BACKGROUND**

S2 owns and operates a quarters barge, four fixed oil production platforms, a central facility, and various oil wells in the Timbalier Bay Field.[4] Correy Delozier, an operator nominally employed by Pioneer Production Services, Inc. ("Pioneer"), was assigned to work in the field.[5] Pioneer signed a Master Service Agreement with S2 (the "Pioneer MSA") to provide employees to work in the Timbalier Bay Field.[6] Wood Group also signed a Master Service Agreement with S2 ("Wood Group MSA") to provide labor in

---

[1] R. Doc. 30.
[2] R. Doc. 85. Intervenor Plaintiff MAI opposed the motion. R. Doc. 87. Although the motion was not filed against them, Plaintiffs filed an opposition. R. Doc. 88. Intervenor Plaintiff MAI filed a supplemental opposition to the motion. R. Doc. 95. Defendant S2 filed a reply. R. Doc. 115. Intervenor Plaintiff MAI provided a supplemental response to Defendant S2's statement of undisputed material facts. R. Doc. 131.
[3] R. Doc 98. Intervenor Plaintiff MAI opposed the motion. R. Doc. 109. Intervenor Plaintiff MAI provided a supplemental response to Defendant S2's statement of undisputed material facts. R. Doc. 132.
[4] R. Doc. 105-11 at ¶ 4, 9; R. Doc. 110-2 at ¶ 3; R. Doc. 138 at 3.
[5] R. Doc. 98-2.
[6] R. Doc. 68 at ¶ VI; R. Doc. 105-11 at ¶ 2; R. Doc. 110-2 at ¶¶ 1, 3; R. Doc. 137 at 2; R. Doc. 138 at 2.

1

the Timbalier Bay Field.[7] Stephen Dauzat is an employee of Wood Group. The Pioneer and Wood Group MSAs are identical.

Delozier alleges he was working as an offshore operator on S2's fixed platforms and wells when he sustained significant injuries by being "crushed" between an oil well and a crew boat, driven by Dauzat, during an attempted transfer.[8] Delozier and his wife, Valerie Delozier, filed suit against S2, Pioneer, Wood Group, and Dauzat seeking damages for his injuries and her loss of consortium.

MAI intervened in this case against the Deloziers, Pioneer, S2, Wood Group, and Dauzat, seeking to recover workers' compensation benefits it paid to Correy Delozier on Pioneer's behalf.[9] MAI's intervention sets forth its claims as:

> Pursuant to La Rev Stat § 23:1101 *et seq.*, Pioneer Production Services and MAI are subrogated statutorily[10] and in equity[11] to the rights of Correy Delozier and Valerie Delozier, and MAI is subrogated legally and contractually to the rights of Mr. Delozier's employer, Pioneer Production Services, to the extent of the amounts that may be paid by MAI to, or on behalf of, Correy Delozier and Valerie Delozier, and also to the extent of any additional amounts which MAI may be presently obligated or might in the future become obligated to pay to, or on behalf of, Correy Delozier and Valerie Delozier.[12]

Pioneer answered the complaint in intervention, asserting that MAI failed to state a cause of action and that MAI has no right of action, among other defenses.[13] The Deloziers answered the complaint in intervention and pled similar defenses.[14] Wood Group and

---

[7] R. Doc. 98-3.
[8] R. Doc. 68 at ¶ XIX.
[9] R. Doc. 30.
[10] *See* La. Rev. Stat. § 23:1101.
[11] "The common law theory of equitable subrogation does not exist in Louisiana. The only two types of subrogation recognized in Louisiana, i.e., legal and conventional, are provided for in our Civil Code. [La. Civ. C. art. 1825.]" *Great Southwest Fire Ins. Co. v. CAN Ins. Companies*, 547 So.2d 1339 (La. App. 3 Cir. 1989) (citations omitted).
[12] R. Doc. 30 at ¶ 7.
[13] R. Doc. 32.
[14] R. Doc. 33.

2

Dauzat filed an answer denying MAI's right to intervene.[15] S2 filed an answer, arguing that MAI waived subrogation against S2 under the MSA.[16] Only S2, Wood Group, and Dauzat filed motions for summary judgment on the claim.

## **STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the nonmoving party.[20] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[21]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[22] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[15] R. Doc. 83.
[16] R. Doc. 84.
[17] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[21] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[22] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[23]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[24] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[25] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[26] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[27] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must

---

[23] *Celotex*, 477 U.S. at 322–24.
[24] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[25] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[26] *Celotex*, 477 U.S. at 332–33.
[27] *Id.*

either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[28] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[29]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[30]

## ANALYSIS AND LAW

**I.   Louisiana Law applies.**

The parties dispute whether Louisiana or general maritime law applies. The accident happened on a fixed platform in the territorial waters of Louisiana.[31] The Pioneer MSA and the Wood Group both include a choice of law provision:

> 21.7 GOVERNING LAW: Except as otherwise expressly provided in this Contract, this Contract shall be governed by and construed in accordance with the laws of the State of Louisiana, without regard to conflicts of law principles that might apply the law of another jurisdiction.[32]

---

[28] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[29] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[30] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[31] R. Doc. 159 at 2.
[32] R. Doc. 98-2 at § 21.7; R. Doc. 98-3 at § 21.7.

The parties disagree as to whether the choice of Louisiana law governs or whether the nature of the work done under the Pioneer MSA has a sufficient maritime relationship to call for the application of maritime law. The Fifth Circuit has ruled, "[o]ur case law makes clear that, if the contract is nonmaritime, Louisiana law will govern its construction even in the face of a choice-of-law clause. This is so because enforcement of the choice-of-law clause would violate Louisiana's public policy and directly contravene [LOAIA]."[33] MAI argues it is premature to determine this issue because there is a genuine issue of material fact with respect to whether the work contemplated under the MSAs involved the use of a vessel which was of a substantial nature.[34] The Deloziers agree with MAI that genuine issues of material fact exist with respect to whether the work under Pioneer MSAs is of a maritime nature.[35] Wood Group and Dauzat argue the choice of law is irrelevant because MAI's waiver of subrogation is enforceable under both Louisiana and general maritime law.[36] S2 argues the Pioneer MSA is governed by Louisiana law because of its choice of law provision.[37]

In this case, it is not necessary to determine whether or not the work under the Pioneer MSA is maritime in nature. If the work is not maritime in nature, Louisiana law clearly applies. If the work is maritime in nature, general maritime law recognizes and enforces choice of law provisions so long as the law selected has a substantial relationship to the parties or transaction in the case.[38] In *Stoot v. Fluor Drilling Services, Inc.*, an

---

[33] *In re Larry Doiron, Inc.*, 879 F.3d 568, 571 n10 (5th Cir. 2018) (citing *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 254 (5th Cir. 2001)).
[34] R. Doc. 87 at 3 (citing *Barrios v. Centaur*, 942 F.3d 670 (5th Cir. 2019) (applying *In re Larry Dorion, Inc.* 879 F.3d 568 (5th Cir. 2018)) to a mixed services contract)).
[35] R. Doc. 88 at 2.
[36] R. Doc. 98-1 at 9.
[37] R. Doc. 115 at 2.
[38] *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988).

6

offshore drilling company contracted with a catering company to service its rig.[39] The catering contract included a clause requiring the catering company to indemnify the drilling company.[40] An employee of the catering company assaulted an employee of the drilling company aboard the rig.[41] The enforceability of the indemnification clause depended on whether Louisiana or general maritime law applied. The Fifth Circuit found Louisiana law applied despite the maritime nature of the work contemplated under the contract.[42] The court explained, "under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law."[43]

In the instant matter, Delozier's accident took place on a platform in Louisiana's territorial waters.[44] S2 is a limited liability company organized under the laws of Louisiana.[45] Pioneer is a Louisiana corporation.[46] Wood Group is authorized to do and does business in Louisiana.[47] The Court finds the parties and the transaction had a substantial relationship with the State of Louisiana and Louisiana's laws do not conflict with the fundamental purposes of maritime law. The choice of Louisiana law provision governs.

---

[39] *Stoot*, 851 F.2d at 1516.
[40] *Id.*
[41] *Id.*
[42] *Id.* "A caterer's employee working as a galley hand on a drilling rig is a seaman." *Id.* (citing *O'Dell v. North River Insurance Co.,* 614 F.Supp. 1556, 1560 (W.D. La. Aug. 13, 1985)).
[43] *Id.* at 1517 (citing *Hale v. Co–Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D. La. July 5, 1984)).
[44] R. Doc. 159 at 2.
[45] R. Doc. 20 at I(B).
[46] *Id.* at I(A).
[47] *Id.* at I(C).

## II. The Statutory Right to Subrogation May be Waived.

Louisiana law provides MAI a statutory right to recover workers' compensation payments it has made to Delozier from any third party that caused his injury. La. Rev. Stat. 23:1101 provides:

> A. When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as "third person") other than those persons against whom the said employee's rights and remedies are limited in R.S. 23:1032, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.
>
> B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit in district court against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person, and where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage. The amount of any credit due the employer may be set in the judgment of the district court if agreed to by the parties; otherwise, it will be determined pursuant to the provisions of R.S. 23:1102(A).[48]

MAI argues the waiver of subrogation contained in its policy does not waive its independent statutory right to recover workers' compensation payments it has already made, as well as a credit against future payments.

---

[48] La. Rev. Stat. 23:1101(B).

8

Case 2:18-cv-14094-SM-DPC Document 168 Filed 11/12/20 Page 9 of 18

The statutory right to reimbursement of compensation benefits paid to an employee may be validly waived by the carrier, if it chooses to do so in the insurance policy or by a separate agreement through a "waiver of subrogation."[49] In *Sandbom v. BASF Wyandotte, Corp.*,[50] a Louisiana court held that an insurer may waive its right to subrogation, if such waiver is stated in a contract or policy. The Court explained

> [a]n employer may contractually waive the employer's right to reimbursement of compensation benefits paid an employee. Additionally, the insurance carrier may waive such rights in its policy of insurance with the employer, or by separate agreement with the third party.[51]

In *Capps v. Humble Oil & Refining Co.*, a carrier which had waived its subrogation right, argued it had an independent statutory right to subrogation.[52] The Fifth Circuit rejected the carrier's argument and held the "carrier waived any claim to the settlement between the third party and the employee."[53] The waiver of subrogation barred the carrier from any claim to the legal settlement between the injured employee and others.[54]

Because the statutory right to subrogation asserted by MAI may be waived, the Court must determine whether there is an enforceable waiver of subrogation in this case.[55]

### III. MAI Insurance Policy, Pioneer MSA, and Wood Group MSA

The provisions of the MAI insurance policy and the MSAs are not in dispute. The parties agree MAI issued a workers' compensation insurance policy to Pioneer and paid

---

[49] H. Alton Johnson, WORKERS' COMPENSATION LAW AND PRACTICE § 370, *in* 14 La. Civ. L. Treatise 17 (5th ed.).
[50] 674 So.2d 349 (La. App. 1 Cir. 1996).
[51] *Id.* at 363. *See Bowman v. Ga. Pacific Corp.*, 2007 WL 9706567 (M.D. La. Mar. 21, 2007) (holding that an "employer may contractually waive its right to reimbursement of workers' compensation benefits paid to an employee, and the insurance carrier may also waive its rights to reimbursement of benefits paid.").
[52] 536 F.2d 80, 81 (5th Cir. 1976).
[53] *Id.* (citing *Allen v. Texaco, Inc.*, 510 F.2d 977, 978 (5th Cir. 1974).
[54] *See Harris v. Tenneco Oil Co.*, 563 So.2d 317 (La. App. 4 Cir. 1990) (explaining such a reimbursement would allow the carrier "to do indirectly what it could not do directly").
[55] MAI asserts that, if Pioneer is found to be a Jones Act employer, it is entitled to subrogation by Pioneer. R. Doc. 87 at 6. Because Pioneer has not filed a motion for summary judgment, this issue is not before the Court.

9

benefits to Delozier under the Louisiana Workers' Compensation Act.[56] The policy affirms MAI's right to recover payments from anyone liable for an injury covered by the policy, but also includes an endorsement providing a waiver of subrogation in favor of a "person or organization named in the Schedule."[57] The insurance policy provides:

WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

> We have a right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> SCHEDULE
>
> Any persons or organizations with whom the named insured has agreed by written contract to furnish this waiver.[58]

The parties agree the Pioneer MSA required Pioneer to purchase workers' compensation insurance and to require that the policy contain a waiver of subrogation.[59] The Pioneer MSA provides:

> 13.2 Contractor shall maintain at its cost the following minimum types and limits of insurance in compliance with all applicable laws and satisfactory to Company:
>
> 13.2.1 WORKERS COMPENSATION INSURANCE with statutory limits . . .
> . . .
> 13.3 To the fullest extent permitted by applicable law and without in anyway limiting Contractor's liability or responsibility under the indemnity provisions hereof, all insurance policies maintained by Contractor in accordance with the requirements set forth herein shall include Company Group as additional insureds; shall include waivers of the insurer's rights of

---

[56] R. Doc. 85-1 at 4; La. Rev. Stat. § 23:1021, *et seq*.
[57] R. Doc. 85-5 at 18.
[58] R. Doc. 85-5 at 18.
[59] R. Doc. 98-2 at §§ 13.2.1, 13.3. The Wood Group MSA contains the same provision, but Wood Group's insurer did not pay compensation benefits to Delozier and has not made a claim for reimbursement. R. Doc. 98-3 at §§ 13.2.1, 13.3.

subrogation against Company Group; and shall set forth that the insurance shall be primary, and not excess of contributing insurance, but such obligations shall be limited to the extent of Contractor's indemnity obligations assumed herein. Contractor agrees to obtain endorsements to remove all "other insurance" provisions of its policies, but such obligations shall be limited to the extent of Contractor's indemnity obligations assumed herein. Contractor agrees that no "other insurance" provisions in its policies shall be effective against "Company" or "Company's" insurers, but such obligations shall be limited to the extent of Contractor's indemnity obligations assumed herein.

> 14.1 TO THE EXTENT PERMITTED BY LAW, CONTRACTOR SHALL INDEMNIFY, RELEASE, DEFEND, PROTECT AND HOLD HARMLESS COMPANY, ITS MEMBERS AND MANAGERS, ITS PARENT, SUBSIDIARIES AND AFFILIATED COMPANIES, ITS OTHER CONTRACTORS, ITS AND THEIR RESPECTIVE EMPLOYEES, DIRECTORS, OFFICERS, AGENTS, REPRESENTATIVES, TOGETHER WITH ANY OF COMPANY'S NON-OPERATING LEASEHOLD CO-OWNERS AND JOINT VENTURERS, (THE "COMPANY GROUP") . . . .[60]

"Company Group" is defined as the "company, its members and managers, its parent, subsidiaries and affiliated companies, *its other contractors, its and their respective employees*, directors, officers, agents, representatives, together with any of Company's non-operating leasehold co-owners and joint venturers . . ."[61] Wood Group, as S2's contractor, and Dauzat, as Wood Group's employee, are members of the "Company Group" contemplated by the Pioneer MSA.[62]

The parties agree that at one point S2 made a demand for indemnity from Pioneer for all damages S2 might be required to pay to Delozier. In a letter dated January 18, 2019 to Matthew Compeaux, Pioneer's president, S2 "demand[ed] full indemnity from Pioneer Production Services, Inc., and its underwriters for all damages which might be assessed in connection with this claim."[63] On February 11, 2019, attorneys for MAI declined the

---

[60] *Id*.
[61] *Id*. at § 14.1 (emphasis added).
[62] *See* R. Doc. 98-3 (master service agreement establishing Wood Group as S2's contractor).
[63] R. Doc. 87-4 at 1-2.

11

claim for indemnity, stating, "Underwriters and Pioneer must decline S2's tender because S2 opted not to pay a *Marcel* premium to insure the indemnity provisions in the MSA. Accordingly, the indemnity provisions in the MSA violate public policy under the Louisiana Oilfield Anti-Indemnity Act and are void."[64]

At the August 17, 2020 oral argument on these motions, S2's counsel recognized S2 does not have a right to indemnification from Pioneer and represented to the court that S2 is not seeking indemnification. S2's counsel stated, "[a]nd S2 originally, when this case started, we did make a claim for indemnity. However, that claim was turned down by Pioneer, and we have not made a claim for indemnity in this case."[65] S2's counsel also stated "I can tell the Court right now that we're not going to make a claim for indemnity against Pioneer again."[66] S2 has not filed a demand for indemnity in this action.[67]

### IV. MAI's Waiver of Subrogation is Enforceable.

S2, Wood Group, and Dauzat seek summary judgment that MAI waived its right to subrogation against them under the MSAs. MAI responds with three arguments. First, MAI argues the waiver of subrogation in its insurance policy is invalid under the Louisiana Oilfield Indemnity Act ("LOAIA") because S2 has made a claim for indemnification.[68] Second, MAI argues the language of the MSAs expressly limits the extent of the waiver of subrogation to the extent the indemnification provisions are assumed.[69] Third, MAI argues summary judgment is not appropriate because there are genuine issues of disputed fact as to whether S2 paid *Marcel* premiums.

---

[64] R. Doc. 87-4 at 3.
[65] R. Doc. 166 at 10:22-25.
[66] *Id.* at 11:17-18.
[67] R. Doc. 85-1 at 8.
[68] R. Doc. 98-2 at § 13.3; R. Doc. 98-3 at § 13.3. *See* La. Rev. Stat. § 9:2780.
[69] R. Doc. 109 at 4.

### A. S2 Has Not Made a Claim for Indemnification.

Waivers of subrogation, similar to the ones found in the MSAs, are designed to relieve oil companies of the obligation to reimburse contractors or insurance companies for workers' compensation payments.[70] In order to curb the potentially unfair effects of waiver of subrogation clauses, LOAIA was enacted to alleviate the "inequity… foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some [oil and gas] agreements."[71] LOAIA states that "[a]ny provision in any agreement arising out of operation, services, or activities listed in Subsection C [of this Section] which requires waivers of subrogation . . . shall be null and void and of no force and effect."[72] The Louisiana Supreme Court has reasoned, however, that a waiver of subrogation clause could only benefit an oil company when applied with an indemnification clause.[73] Therefore, the court held that, if indemnification is not sought by the oil company, then a waiver of subrogation clause will not violate LOAIA's purpose.[74]

MAI argues S2 seeks to frustrate LOAIA's purpose by pursuing indemnification against Pioneer in conjunction with enforcement of the subrogation waiver.[75] S2 has not filed a claim for indemnity in the record of this litigation.[76] S2 is not asking this Court to enforce the Pioneer MSA's indemnity provisions. S2 and Wood Group rely on *Fontenot v.*

---

[70] *See Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557, 564-65 (5th Cir. 1996) (explaining how subrogation waivers assure "the oil company will not be exposed to an action for reimbursement of compensation payments"); *see also Hudson v. Forest Oil Corp.*, 372 F.3d 742, 745-46 (5th Cir. 2004) (finding a policy's waiver of subrogation clause was enforceable against an intervening insurer seeking workers' compensation insurance reimbursement).
[71] La. Rev. Stat. § 9:2780(A).
[72] La. Rev. Stat. § 9:2780(G).
[73] *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557, 564 (La. 1996).
[74] *Id.* at 565.
[75] *Id.* at 5.
[76] R. Doc. 85-1 at 5, 11.

13

*Chevron U.S.A. Inc.*[77] and *Boudreaux v. Scott's Boat Rentals, LLC*[78] to support their argument that, because they are not seeking indemnity from Pioneer, they are entitled to judgment as a matter of law that the waiver of subrogation clause in the MSA does not run afoul of Louisiana Oilfield Anti-Indemnity Act ("LOAIA") and, as a result, is enforceable.[79]

In *Fontenot*, a drilling company entered into a workover contract with an oil company to work on platforms in the Gulf of Mexico.[80] The drilling company agreed to provide its own employees with workers' compensation insurance and further agreed to provide a waiver of subrogation in favor of the oil company.[81] After one of the drilling company's workers was injured in the course and scope of his employment on the platforms, the workers' compensation insurer for the drilling company paid out benefits.[82] The injured worker sued the oil company, and the insurer filed a complaint in intervention seeking subrogation for the amounts it paid in workers' compensation benefits.[83] The oil company did not seek indemnity from the insurer.[84] The Louisiana Supreme Court held the waiver of subrogation was valid because such waivers are voided by the LOAIA only when subrogation is sought to be enforced *in conjunction* with the oil company's enforcement of an indemnification clause.[85] The court reasoned that, in oil and gas contracts, waivers of subrogation offend public policy because they foist an

---

[77] *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557, 562-63 (La. 1996).
[78] *Boudreaux v. Scott's Boat Rentals, LLC*, 184 F.Supp.3d. 343, 347 (E.D. La. Apr. 22, 2016).
[79] R. Doc. 85-1 at 8; R. Doc. 98-1 at 8.
[80] *Fontenot*, 676 So.2d at 559.
[81] *Id.*
[82] *Id.*
[83] *Id.* The injured worker also sued the owner of a vessel that was transporting workers to shore, but that did not affect the analysis of this case. *Id.*
[84] *Id.* at 566.
[85] *Id.* at 565.

14

inequitable risk onto contractors and away from oil companies.[86] Similarly, indemnification clauses afford oil companies a means to shift liability onto contractors, inoculating the oil companies from bearing the costs of accidents altogether.[87] "This shift of liability only occurs when the two clauses are used together. Thus, voiding a waiver of subrogation clause only achieves the purpose of the Anti–Indemnity Act when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause."[88]

In *Boudreaux*, an oil company and an independent contractor providing production monitoring services signed a master service agreement including a waiver of subrogation.[89] The oil company also contracted with a boating service company to provide transportation in the offshore oil field.[90] An employee of the independent contractor was injured and filed suit against both the oil company and the boating service company.[91] The independent contractor intervened against the injured worker and the boating service company seeking subrogation or reimbursement of compensation paid to the injured worker under workers' compensation.[92] The *Boudreaux* court held the waiver of subrogation in the master service agreement signed by the oil company and independent contractor was valid and did not frustrate LOAIA's purposes because the boating service was not seeking indemnification.[93]

MAI's waiver of subrogation in the MSAs is not invalidated by LOAIA.

---

[86] *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557, 562-63 (La. 1996) (interpreting the legislative finding in LOAIA under La. Rev. Stat. 9:2780(A)).
[87] *Id.* at 565.
[88] *Id.*
[89] *Boudreaux v. Scott's Boat Rentals, LLC*, 184 F.Supp.3d 343, 347 (E.D. La. Apr. 22, 2016).
[90] *Id.* at 344.
[91] *Id.*
[92] *Id.*
[93] *Id.* at 347-48.

15

### B. The MSA Language Does Not Narrow the Waiver of Subrogation's Application.

MAI points to the language in the MSAs to argue the waiver of subrogation is inapplicable because indemnification is not being sought.[94] The MSAs state the waiver of subrogation is "limited to the extent of Contractor's indemnity obligations assumed herein."[95] MAI argues the waiver of subrogation is enforceable only when Pioneer or Wood Group is obligated to indemnify S2, but that jurisprudence prohibits enforcement of the waiver of subrogation when used in conjunction with the indemnity clause.[96] By this logic, the waiver of subrogation is always void under the language of the MSAs. The master service agreement in *Boudreaux* contained a similar limitation on the waiver of subrogation, yet the court still found the waiver to be enforceable. This argument fails.

### C. S2 Did Not Pay *Marcel* Premiums.

MAI argues the motions for summary judgment should be denied because there is a disputed issue of material fact as to "whether or not S2 made payments under the *Marcel* exception" and that, if S2 did not pay the *Marcel* premiums, S2 has no right to indemnity from Pioneer.[97]

A *Marcel* premium is a payment in which the principal covers the entire cost of its own insurance coverage and secures an endorsement naming it as an insured in its contractor's policy, rendering the coverage enforceable without frustrating LOAIA.[98] LOAIA is designed to ensure the economic burden of insurance coverage and liability does

---

[94] R. Doc. 109 at 4.
[95] R. Doc. 85-3 at 16. *See* R. Doc. 98-2 at § 13.3; R. Doc. 98-3 at 13.3.
[96] R. Doc. 109 at 4.
[97] R. Doc. 87 at 4.
[98] *See Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 481 (5th Cir. 2002) (quoting *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994)).

not fall on independent contractors.[99] In *Marcel v. Placid Oil Co.*, the Fifth Circuit recognized this burden is not placed on independent contractors, even if a claim for indemnification is made, when oil companies pay for their own liability coverage or reimburse the independent contractors fully for the insurance premiums.[100] This reimbursement for insurance coverage is known as a *Marcel* premium.[101] When *Marcel* payments are made, the indemnity clauses of a contract are enforceable.[102]

In a *Marcel* option letter dated October 20, 2017, S2 affirmed it did "not wish to pay for the endorsements for 'Marcel' as specified in [their] MSA with Pioneer Production Services, Inc."[103] In a letter from the underwriter's counsel dated February 13, 2020, counsel stated S2 had rejected the *Marcel* premium.[104] It is an undisputed fact that S2 did not pay *Marcel* premiums.[105]

## CONCLUSION

Under Louisiana law, MAI has waived its right to subrogation against S2, Wood Group, and Dauzat. S2, Wood Group, and Dauzat are entitled to summary judgment that MAI has no right to be subrogated to claims against them.

**IT IS ORDERED** that Defendant S2 Energy Operating LLC's May 12, 2020 motion for summary judgment is **GRANTED**.[106]

---

[99] *Marcel v. Placid Oil Co.*, 11 F.3d 563, 569-70 (5th Cir. 1994).
[100] *Id*.
[101] *Id*. Sometimes this is "economically desirable" for the parties because premiums may be less expensive for independent contractors who merely add oil companies as an "additional insured" than the premiums for oil companies obtaining their own insurance. *Id*. at 570.
[102] *Id*.
[103] R. Doc. 87-4 at 7.
[104] *Id*. at 33.
[105] R. Doc. 115 at 3.
[106] R. Doc. 85.

**IT IS FURTHER ORDERED** that Defendants Stephen Dauzat and Wood Group PSN, Inc.'s July 21, 2020 motion for summary judgment is **GRANTED**.[107]

**New Orleans, Louisiana, this 13th day of November, 2020.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[107] R. Doc. 98.